[Cite as *State v. Brazina*, 2017-Ohio-7500.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 15 MA 0191 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ERIC BRAZINA, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                             Common Pleas of Mahoning County,
                             Ohio
                             Case No. 14 CR 457

JUDGMENT:                    Affirmed in part.  Reversed in part.
                             Remanded.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Paul J. Gains
                             Mahoning County Prosecutor
                             Atty. Ralph M. Rivera
                             Assistant Prosecuting Attorney
                             21 West Boardman Street, 6th Floor
                             Youngstown, Ohio  44503

For Defendant-Appellant:     Atty. Rhys B. Cartwright-Jones
                             42 N. Phelps St.
                             Youngstown, Ohio 44503

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

                             Dated:  August 30, 2017

ROBB, P.J.

{¶1} Defendant-Appellant appeals his conviction entered in Mahoning County Common Pleas Court for telecommunications harassment, impersonating a peace officer, and disrupting public services. Three issues are raised in this appeal. The first is whether there was sufficient evidence Appellant impersonated a peace officer. The second is whether trial counsel was ineffective for failing to stipulate to the prior telecommunication harassment convictions. The third is whether the trial court made the requisite consecutive sentence findings at the sentencing hearing. For the reasons discussed below, the verdicts are affirmed. However, the sentence is reversed and the matter remanded for a limited sentencing hearing because the trial court did not make the required consecutive sentence findings at the sentencing hearing.

Statement of the Facts and Case

{¶2} In January 2014, Appellant pled guilty to seven counts of telecommunication harassment. State's Exhibit 9 and 10. In March 2014, he was sentenced to community control for those convictions and released from the jail. State's Exhibit 10. During the pendency of that case, Appellant was being held in the Mahoning County Jail. Deputy Alicia Hawkins was one of the deputies supervising Appellant. During his stay in the Mahoning County Jail, Deputy Hawkins had to reprimand Appellant because she caught him masturbating. According to Appellant, he felt Deputy Hawkins treated him unfairly.

{¶3} On April 8, 2014, while working at the jail, Deputy Hawkins received a telephone call on the jail's telephone line. The phone call was from a "Brian Myers" claiming to be a Struthers police officer and/or detective. Tr. 131-132. This person told Deputy Hawkins somebody called and complained about her, and he was investigating the complaint. Tr. 132. He asked to meet her on her lunch break. She explained she was not permitted to leave on her lunch break, but told him she would meet him at another time. Tr. 131-132. He indicated he would call back later to set a time to meet. Tr. 132-133. She testified she was scared she would lose her job. Tr.

132. She informed her supervisor about the call and wrote a report on the incident. Tr. 133-134.

**{¶4}** "Brian Myers" called the jail again on April 22, 2014 and spoke to Deputy Hawkins. Tr. 135. During this telephone call they set a date and time to meet. Tr. 135. A meeting was arranged for the next day at the Plasma Center across from the jail. Tr. 136. Deputy Hawkins notified her supervisors of the call and wrote a report on the incident. Tr. 136. The Mahoning Valley Law Enforcement Task Force was notified and they provided surveillance for the meeting. Tr. 137, 165. "Brian Myers" did not show for the meeting. Tr.137, 165.

**{¶5}** On May 14, 2014 Deputy Hawkins received another telephone call while working at the jail. This call was from "Kevin Bryant." Tr. 139. "Kevin Bryant" alleged to be from Trumbull County Administration or Trumbull County Sheriff's Office. Tr.139-140. He told Deputy Hawkins he was getting people together from other jails to talk about jail operations. Tr. 139. He told her he would call back the next day to give her the details of the meeting. Tr. 140. Deputy Hawkins recognized his voice as the same person claiming to be "Brian Myers." Tr. 139. She immediately advised her supervisors of the telephone call and wrote a report. Tr. 140.

**{¶6}** The Task Force was called and Deputy Hawkins was given a recording device to record the next phone call she received from this individual. Tr. 141.

**{¶7}** "Kevin Bryant" called the next day and Deputy Hawkins recorded the conversation. Tr. 142; State's Exhibit 11. He told her the meeting was going to take place the following morning at the old Alberini's in Niles and she was to wear dress clothes and heels. Tr. 142; State's Exhibit 11.

**{¶8}** The Task Force accompanied Deputy Hawkins to the meeting. Tr. 146. No one appeared for the meeting.

**{¶9}** Deputy Hawkins and the officers working on the case went back to the jail. Detective Anthony Murphy remembered another telecommunication harassment case, showed Deputy Hawkins a picture of Appellant, and asked if she knew him. Tr. 147. Deputy Hawkins stated she knew him and relayed the incident at the jail when

she had to reprimand him. Tr. 148-149. She also listened to telephone calls he made from the jail. Tr. 150-151. She identified Appellant's voice as "Brian Myers" and "Kevin Bryant." Tr. 151.

{¶10} Detective Murphy and Sergeant Larry McLaughlin called Appellant's probation officer and went to Appellant's house. Appellant agreed to cooperate and gave a statement. In his statement, Appellant explained he used a computer to make the phone calls and he did these things to "mess" with Deputy Hawkins because of how she treated him when he was in jail. State's Exhibit 12. During the conversation, Appellant admits to calling Deputy Hawkins only twice. However, in discussing the incidents he referenced the call about the Struthers investigation and asking her to meet him at the Plasma Center. State's Exhibit 12. He also talked about acting like he was somebody from Warren/Trumbull County Sheriff's Department and arranging a meeting at the old Alberini's in Niles. State's Exhibit 12.

{¶11} As a result, Appellant was indicted for four counts of telecommunication harassment in violation of R.C. 2917.21(B)(C)(1)(2), fifth-degree felonies; four counts of impersonating a peace officer in violation of R.C. 2921.51(E)(G), third-degree felonies; and four counts of disrupting public services in violation of R.C. 2919.04(B)(C), fourth-degree felonies. 5/22/14 Indictment. The telecommunication harassment charges were elevated to fifth-degree felonies because of his prior telecommunication harassment convictions.

{¶12} Appellant pled not guilty, filed a motion to suppress his confession and Deputy Hawkins' voice identification, and filed a motion in limine to prevent the state from referencing his prior telephone harassment convictions and similar unproven conduct. 9/3/14 Motion to Suppress; 5/18/15 Motion to Suppress Voice Identification; 9/14/15 Motion in Limine. The motions were overruled. 5/19/15 J.E.; 8/21/15 J.E.

{¶13} The case proceeded to a jury trial. Appellant was found guilty on four counts of telephone harassment, four counts of impersonating a peace officer, and one count of disrupting public services. 9/18/15 Verdict forms; 9/28/15 J.E.

{¶14} Sentencing occurred on October 1, 2015. Appellant received an aggregate sentence of 144 months (12 years). 11/9/15 J.E. Appellant received 12

months for each telecommunication harassment conviction (counts 1-4), 36 months for each impersonating a peace office conviction (counts 5-8), and 18 months for disrupting public services (count 9). The sentences for counts 1, 5, and 9 ran concurrently. The sentences for counts 2 and 6 ran concurrently. The sentences for counts 3 and 7 ran concurrently. The sentences for counts 4 and 8 ran concurrently. Each of those concurrent sentences ran consecutively to each other and consecutively to any sentence imposed for violating community control. 11/9/15 J.E.

**{¶15}** Appellant timely appealed the conviction. 10/26/15 NOA.

### First Assignment of Error

"Insufficient evidence supported Counts 7 and 8, Impersonating a Peace Officer."

**{¶16}** Counts 7 and 8 of the indictment allege Appellant violated R.C. 2921.51(E) on May 14 and May 15, 2014. On those dates, Appellant claimed to be "Kevin Bryant." Appellant argues the evidence introduced at trial did not establish Appellant claimed to be a peace officer, rather the evidence indicated he claimed to be from Trumbull County Administration. Accordingly, Appellant asserts there was insufficient evidence to support his conviction because there was no evidence he claimed to be a police officer on those dates.

**{¶17}** Sufficiency of the evidence is a question of law dealing with the legal adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998).

**{¶18}** R.C. 2921.51 is titled "Impersonation of certain officers." Division (E) states, "No person shall commit a felony while impersonating a peace officer, private police officer, federal law enforcement officer, officer, agent, or employee of the state, or investigator of the bureau of criminal identification and investigation." R.C.

2921.51(E). The element of the offense Appellant focuses on is impersonating a peace officer.

**{¶19}** In describing the phone calls occurring on May 14 and May 15, 2014, Deputy Hawkins stated the caller "said he was Kevin Bryant from Trumbull County Administration and he was getting people together from other jails to talk about how we run – how our operations run at the jail." Tr. 139. She also testified he said he was from Trumbull County Sheriff's Office. Tr. 140. In describing the last phone call, she stated he pretended he was a Trumbull County officer; "This is the phone call where he acts as a Trumbull County officer and he wants me to meet him, set up a time and place to meet." Tr. 144-145.

**{¶20}** Although Deputy Hawkins states "Kevin Bryant" indicated he was from Trumbull County Administration, she also testified he acted as if he was a "Trumbull County officer." Peace officer is defined in R.C. 2921.51(A) as "a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation, or township constable, who is employed by a political subdivision of this state." Thus, if Appellant was acting as a "Trumbull County officer" then he was impersonating a peace officer. Given her testimony, viewed in the light most favorable to the prosecution, there was sufficient evidence Appellant was impersonating a peace officer in the May 14 and 15, 2014 phone calls.

**{¶21}** This assignment of error is meritless.

<u>Second Assignment of Error</u>

"Trial counsel was ineffective for failing to curtail admission of Brazina's prior criminal conduct."

**{¶22}** Appellant contends counsel was ineffective for two reasons. First, he asserts counsel should have stipulated to his prior convictions because a stipulation would have prevented the jury from hearing testimony that Appellant had previously committed this crime. The second alleged ineffective performance was allowing the jury to hear about him masturbating while he was in the county jail.

**{¶23}** We review a claim of ineffective assistance of counsel under a two-part test, which requires the defendant to demonstrate: (1) trial counsel's performance fell

below an objective standard of reasonable representation; and (2) prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141–143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Both prongs must be established; if the performance was not deficient, then there is no need to review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶24}** In evaluating the alleged deficiency in performance, our review is highly deferential to counsel's decisions as there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance. *Bradley*, 42 Ohio St.3d at 142–143, citing *Strickland*, 466 U.S. at 689. We are to refrain from second-guessing the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). There are "countless ways to provide effective assistance in any given case." *Bradley*, 42 Ohio St.3d at 142, citing *Strickland*, 466 U.S. at 689. Debatable trial strategy very rarely constitutes ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987).

**{¶25}** To show prejudice, a defendant must prove his lawyer's errors were so serious that there is a reasonable probability the result of the proceedings would have been different. *Carter*, 72 Ohio St.3d at 558.

**{¶26}** As to whether trial counsel was ineffective for failing to stipulate to the prior convictions for telecommunications harassment, the Ohio Supreme Court has recently addressed a similar argument in the context of prior felony drug convictions. *State v. Spaulding*, __ Ohio St.3d __, 2016-Ohio-8126, __ N.E.3d __, ¶ 153. The Court found no merit with the Spaulding's argument that trial court was ineffective for not offering to stipulate to the prior convictions:

> Spaulding next argues that his trial counsel were constitutionally ineffective for not objecting to the journal entries or offering to stipulate to his prior convictions. But even assuming that counsel should have objected to the judgment entries or offered to stipulate to the convictions, Spaulding has not established a "reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different," *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. If Spaulding had stipulated to his prior offenses, the jury still would have learned that he had at least prior felony drug convictions and prior domestic-violence convictions. *See* R.C. 2923.13(A) (to convict, the state had to prove that Spaulding had been previously convicted of a felony drug offense); R.C. 2919.25 (to convict Spaulding of third-degree-felony domestic violence, the state had to prove that he had been convicted of two or more prior domestic-violence offenses). And other witnesses testified about the incidents underlying the domestic-violence convictions.

*Id.*

{¶27} That reasoning is equally applicable here. Appellant cannot establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Even if Appellant had stipulated to the prior convictions, the jury would still have learned about the prior telecommunication harassment offenses because the prior convictions were an element of the fifth-degree felony telecommunication harassment charges.

{¶28} Furthermore, because the prior convictions were an element of the offenses, the decision to not stipulate to the prior convictions and to acknowledge the convictions in the defense's opening statement also appears to be trial strategy. We will not second guess trial strategy. *Carter*, 72 Ohio St.3d at 558.

{¶29} As to the introduction of the masturbation incident, Appellant cannot demonstrate a reasonable probability that had it not been introduced, the result of the proceedings would have been different. The masturbation incident was introduced to establish how Deputy Hawkins and Appellant knew each other. The masturbation incident probably was not needed to show Appellant and the victim's familiarity with each other; familiarity could have been demonstrated by indicating Deputy Hawkins supervised Appellant while he was in the county jail awaiting resolution of his other telecommunication harassment charges. Her oversight of him was why she was targeted. Regardless, even if the masturbation incident was not discussed, the result

would have been the same; the evidence against Appellant was overwhelming. Deputy Hawkins identified his voice. During his interview, Appellant admitted to committing the crimes. He admitted he set up two different meetings, one at the Plasma Center and the other at the old Alberini's, and he admitted he posed as a peace officer from Trumbull County and Struthers. Appellant's second reason for why counsel was ineffective fails.

**{¶30}** This assignment of error is meritless.

<u>Third Assignment of Error</u>

"The trial court erred in imposing consecutive sentences, totaling 12 years, without making adequate findings under R.C. 2929.14 and that were otherwise contrary to law."

**{¶31}** Appellate courts review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. Under R.C. 2953.08(G)(2) an "appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.*

**{¶32}** When a trial court imposes consecutive sentences it must make the required R.C. 2929.14(C)(4) findings at the sentencing hearing, and it must incorporate those findings into the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 654, ¶ 29. We have previously explained R.C. 2929.14(C)(4) requires a sentencing court to find: "(1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public, and (3) one of the findings described in subsections (a), (b) or (c)." *State v. Jackson*, 7th Dist. No. 15 MA 93, 2016-Ohio-1063, ¶ 13. Subsections (a), (b), and (c) provide:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a

sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)     At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

**{¶33}** In ordering consecutive sentences, the trial court made the following statements:

The Court has considered the record, the oral statements made, and the principles and purposes of sentencing under Ohio Revised Code 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code 2929.12.   Defendant waived his right to presentence investigation.   However, the Court will order a postsentence investigation.

Court finds defendant was convicted by jury of four counts of telecommunications harassment, all four being violations of Ohio Revise Code 2917.21(B)(C)(1)(2), felonies of the fifth degree; to four counts of impersonating a peace officer, violation of Ohio Revised Code 2921.51(E)(G), felonies of the third degree; and to one count of disrupting public services, violation of Ohio Revised Code 2904.04(B)(C), felony of the fourth degree.

The Court further finds defendant committed these acts while on probation to another Common Pleas Court.

Court finds this was part of a course of conduct and that the defendant's criminal conduct demonstrates consecutive sentences are necessary.

8/9/16 Tr. 11-12.

**{¶34}** Appellant contends these statements do not encompass all the required findings. This court agrees.

**{¶35}** The trial court made a (C)(4)(a) finding; it found Appellant committed the offenses while on community control for another offense.

**{¶36}** However, the trial court did not clearly make any of the other required findings. It is acknowledged "magic" or "talismanic" words are not needed to impose consecutive sentences. *State v. Jackson*, 7th Dist. No. 14 MA 99, 2015-Ohio-1365, ¶ 10, citing *State v. Bellard*, 7th Dist. No. 12 MA 97, 2013–Ohio–2956, ¶ 17. "A word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 2014–Ohio–3177 at ¶ 29. It is difficult to discern from the record that the trial court engaged in the correct analysis.

**{¶37}** The trial court did state these crimes were part of a course of conduct and consecutive sentences were necessary. This complied with a (C)(4)(b) finding that "the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." The statements may be a finding that "consecutive sentences are necessary to protect the public from future crime or to punish the offender." However, those two statements alone are not sufficient to qualify as a protect the public finding. Furthermore, the trial court made no finding which could qualify as a

proportionality finding, i.e., consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public.

**{¶38}** Consequently, the record does not demonstrate compliance with R.C. 2929.14(C)(4); it is not discernable from a review of the sentencing hearing transcript that the trial court engaged in the correct analysis and made the required findings at the sentencing hearing. *Bonnell*, 2014–Ohio–3177 at ¶ 29. Appellant's argument has merit.

**{¶39}** Appellant's second argument under this assignment of error is the sentence is an abuse of discretion. Appellant asserts 12 years for "prank phone calls" is beyond what is necessary to carry out the purposes and principles of felony sentencing. He asserts no one was injured, there was no destruction of property, and there was no calculated expense.

**{¶40}** This argument is meritless. We do not review a sentence for an abuse of discretion. R.C. 2953.08(G)(2) ("The appellate court's standard for review is not whether the sentencing court abused its discretion."). Furthermore, trial courts have broad discretion in making sentencing decisions; sentencing statutes and case law indicate appellate courts defer to trial court's sentencing decisions. *State v. Rahab*, __ Ohio St.3d __, 2017-Ohio-1401, ¶ 10, citing *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002 at ¶ 23 and R.C. 2953.08(G). Moreover, despite Appellant's insistence to the contrary, expenses were incurred because of these "prank calls," and the crimes caused the victim distress. The victim testified she was scared. Appellant knew the victim was a Mahoning County Deputy and called her at the jail; the phone calls occurred while she was at work supervising inmates. The Task Force investigated the matter and provided surveillance for the arranged meetings. Additionally, Appellant has a prior record of telephone harassment and had just begun serving community control for his prior harassing telephone calls when he committed these crimes. Consequently, for those reasons, Appellant's abuse of discretion argument lacks merit.

**{¶41}** In conclusion, this assignment of error has merit in part. The trial court failed to make the necessary consecutive sentence findings at the sentencing

hearing. The sentence is reversed and the matter remanded for a new sentencing hearing. Appellant's abuse of discretion argument, however, lacks merit.

## Conclusion

{¶42} The first and second assignments of error lack merit. The third assignment of error has merit. The verdict is affirmed, the sentence is reversed, and the matter is remanded for a limited sentencing hearing regarding consecutive sentences.

Donofrio, J., concurs,

DeGenaro, J., concurs.